James L. Denison and Lou Anna B. Denison v. Commissioner.
Denison v. Commissioner
Docket No. 5587-70 SC.
United States Tax Court
T.C. Memo 1971-249; 1971 Tax Ct. Memo LEXIS 83; 30 T.C.M. (CCH) 1074; T.C.M. (RIA) 71249; September 28, 1971, filed. James L. Denison and Lou Anna B. Denison, pro se, 6931 E. 11th St., Long Beach, Calif.Sheldon M. Sisson, for the respondent. JOHNSTON Memorandum Findings of Fact and Opinion JOHNSTON, Commissioner: The respondent determined a deficiency in petitioners' Federal income tax for 1968 in the amount of $742.32. The issues for decision are (1) whether certain expenditures incurred by petitioners constitute educational expenses, which are deductible under section 162; [1] and (2) whether certain expenses for maintaining an office in petitioners' home may be deducted as ordinary and necessary business paid or incurred in carrying on a trade or business under section 162. Findings of Fact Some of the facts have been stipulated and are *84 so found. Petitioners, husband and wife, were residents of Long Beach, California when they 1075 filed their petition. In 1968, both petitioners were employed by the Long Beach Unified School District. Mr. Denison holds a general teaching credential from the State of California. He has taught at the R. A. Millikan High School for several years. His current areas of instruction are architectural drawing and automotives. The subject matter of the architectural drawing class includes design, art, color coordination, structural strength and stress. The course appeals to all students - whether or not they plan to attend college. The students learn how to print and to do line work. They study the symbols used in architecture. They then progress to designing in minute detail a house for their own use. Mrs. Denison holds a general elementary credential and in 1968 taught the second and third grades as well as sixth grade German. She has been a teacher for eighteen years. The curriculum consists of reading, writing, spelling, mathematics, social sciences, geography, and science. Her students are seven and eight years old. The school district has limited resources for audio-visual *85 education. During the summer of 1968 the Denisons together with their son took a 10,000 mile trip through the United States in their Volkswagen camper. The main purpose of the trip was to accumulate knowledge and information to use in their classrooms. The travel was not a requirement of their present position. It did not qualify the petitioners for a new position, nor were the petitioners reimbursed for their expenditures. The Denisons' son was 11 or 12 years old in 1968. They had never taken an extended cross-country sightseeing trip before. The trip lasted ten weeks. The petitioners traveled throughout the National Park system and to Montreal, Canada, New England and Washington, D.C. They returned home via New Orleans, Houston and the Southwest. The petitioners claimed the following items as an educational expense: Item
Claimed
Verified
Meals and Lodging
$ 782.00
$ 637.09
Auto Expenses
1,248.00
999.90
Gasoline
* 252.41
Tour Admissions
227.00
228.75
Film, slides, etc 57.00
76.35
Total
$2,314.00
$2,194.50
*86 None of the expenses claimed were for their son. At the trial Mr. Denison established that he paid at least $782.00 for meals and lodging. An extensive scrap book was prepared which chronicles each of the places visited on their trip. The cover has a map of the United States and the route is outlined on the map. Each of the items included in the book is mounted with photocorners to permit easy removal for teaching purposes. A number of books and pamphlets were acquired during the trip. Mrs. Denison kept a diary. About 300 slides were taken during the trip. Mr. Denison does not use all the slides in his classes. He exhibits some of the slides (those dealing with architecture) to his classes. Mrs. Denison shows more of the slides. She brings appropriate portions of the scrapbook to the class, e.g., the Indian portion when studying Indians, the Plymouth Rock photo as Thanksgiving approaches. Mrs. Denison uses most of the slides over a period of a year. The slides are mounted on a projection wheel and can be shown in sequence - much like a home movie. About once a year the entire set of slides is shown to her school children as part of a picture tour of the United States. There may *87 be creative writing stories based upon the slides. The only time the slides were shown as a whole in 1970 was just before summer vacation; however, the slides were shown in part three times during the last half of 1970. Both petitioners perform substantial nonclassroom duties at home in connection with their employment. The petitioners are either not permitted or not encouraged to use their classrooms at night, on weekends or during school vacations. Petitioners' house has five rooms: two bedrooms, a den, kitchen, living room, and dining room. The den is used exclusively for the preparation and storage of classroom materials. The workload spills over into the rest of the house. The den has 168 square feet. The home has a total of 1,500 square feet. Twenty percent (20%) of the utilities, upkeep and depreciation of their 5-room home was deducted as applicable to business use. The Denisons have classroom material scattered across the house. Part of the residence is used for the storage of slides, cameras, and movie film (i.e., audio-visual aids). There is a library of school books. Much time is spent reviewing and grading 1076 papers. Lesson plans and report cards are done at *88 home - as are special classroom aids. A great deal of evening and weekend time is devoted to classroom work. Mr. and Mrs. Denison arrive home between 4:00 and 5:00 P.M. Dinner is at 6:00 P.M. They begin work about 7:00 P.M. and finish between 9:00 P.M. and midnight. A rough estimate of the time the Denisons spend each weekend on classroom activities would be 16 hours (per person). During the summer, although the Denisons do not teach, they do use the house on occasion to make new materials for the coming year. The Denisons watch television and read the daily paper at home. They work around their home, e.g., planting. Mr. Denison's reading includes "Popular Mechanics", "Better Homes and Gardens". Mr. Denison's employer gives him one free class hour each day to prepare his class material and to correct papers. Many of his colleagues never take any work home. Some of his colleagues have suggested he could accomplish this work in class while his students were working on their own. Ultimate Findings of Fact The trip taken by the Denisons was not directly related to their duties as teachers. Opinion The first issue for determination is whether or not petitioners may deduct *89 expenses incurred during a 10-week, 10,000 mile trip across the United States as ordinary and necessary business expenses under section 162, Internal Revenue Code. We shall first consider the arguments of petitioner James L. Denison (James). James taught architectural drawing and automotives. He contends that his skills as a teacher were improved as a direct result of the trip. However, respondent contends that the benefit derived from the trip was merely incidental to his skills as a teacher, and that the trip did not meet the requirements set out in the Regulations at section 1.162-5(d) which state in part: * * * Expenditures for travel * * * as a form of education are deductible only to the extent such expenditures are attributable to a period of travel that is directly related to the duties of the individual in his employment * * *. For this purpose, a period of travel shall be considered directly related to the duties of an individual in his employment or other trade or business only if the major portion of the activities during such period is of a nature which directly maintains or improves skills required by the individual in such employment * * *. *90 We agree with respondent. James took a number of slides that he believed to be of architectural value. These slides were taken at several of the sites visited for the purpose of showing them to his architectural drawing classes. We do not doubt that the slides were of interest to his students, and may well have served a useful purpose in showing various architectural styles in the United States. However, there is difficulty finding the direct relationship between the entire 10,000-mile tour, and the maintaining or improving of James' skills as a teacher of architectural drawing by showing a few slides. We do not feel that the nature of the trip directly maintained or improved his ability to teach his pupils to design a house in the most minute detail, or to read architectural symbols. The number of slides so used were mainly limited to those taken at Expo' 67, a few in New Orleans, several in St. Louis, and a few in Houston. We must conclude that James has failed to prove that the major portion of the activities during the trip were of a nature that directly maintained or improved his skills as a teacher. Stanley Marlin, 54 T.C. 560, 566, (1970). Petitioner Lou Anna *91 Denison (Lou Anna) contends that the trip improved her skills as a second and third grade teacher. Respondent, however, contends that the trip only remotely and incidentally related to her duties as a teacher. We agree with respondent. In Stanley Marlin, supra, the taxpayer planned a trip through France to improve her skills as a teacher of world history. The expenses incurred in such a trip were deductible. The taxpayer took slides to use as teaching aids. The Court said at 567, that the fact that she "collected a large number of slides and other teaching aids during her travel tends to demonstrate the substantial connection between such travel and the maintenance and improvement of her skills as a history teacher." Lou Anna collected many slides and materials and used them at every available opportunity such as for holidays, special events, and 1077 before summer recess. However, the relationship is not direct as it was in Marlin. The entire trip was not directly related to Lou Anna's improvement of her skills as a teacher of subjects as various as reading, writing, math, spelling, geography, or science. We distinguish Marlin, supra, because in that *92 case, the taxpayer was a history teacher and the relationship to her skills as a teacher of Western civilization can be directly related to a trip to Europe wherein she visited the Court of Versailles, the Bastille, the Louvre, and other points of historic interest. The Court said at 567: During the tour of France, she [a history teacher] derived personal familiarity with many places that had an important part in the history, art, and architecture of France and, in turn, Western civilization. No doubt this familiarity enabled her to present her course material to her students with added meaningfulness. In the present case, a visit to several national monuments and state parks, although of interest to her students, is not directly related to any specific subject Lou Anna taught. The relationship is too general, unlike that in Marlin. Also, the taxpayer in Marlin was not on any organized tour, whereas the petitioners in the present case took several organized tours. Other cases are on point as far as travel expenses are concerned, [2] and we feel that Lou Anna's expenses for travel, as well as those claimed for tour admissions, cannot be deducted. For the reasons stated, neither *93 petitioner may deduct expenses incurred in travel. As for the expenses claimed for the slides, we assume that petitioners are claiming they are entitled to deduct them rather than be required to capitalize them. Respondent asserts that the slides were only occasionally used but he does not argue that the cost of the slides constitutes a capital expenditure rather than a deductible expense. The slides were of some real benefit and were used at every available opportunity *94 by petitioners. The petitioners took about 300 slides, the cost of the film and development of which has been substantiated to be $76.35. The furnishing of extra school supplies to supplement those provided by the school would appear to be an important ingredient in the performance of the duties of a teacher. [3] These slides are akin to small tools used by employees in mechanical jobs. Such tools as hammers, for example, which ordinarily would have a useful life in excess of a year, may, when purchased, be treated as a deductible item. We turn now to the issue of whether or not petitioners may deduct expenses for maintaining an office in their home as ordinary and necessary expenses incurred in carrying on a trade or business under section 162. We agree that such a deduction in the present case should be allowed. Respondent contends that the deduction should be disallowed because petitioners have not shown that their employers do not give them enough time and space to complete the tasks required of them, nor have they shown that maintaining an office in their home is a condition of their employment as required by Rev. Rul. 62-180. *95 We must disagree and find for petitioners on this issue. The principle involved herein is similar to that in Newi v. Commissioner, 432 F. 2d 998 (C.A. 2, 1970) affirming a memorandum opinion of this Court. In Newi, the taxpayer's job involved viewing television advertisements of American Broadcasting Company, (ABC), and its competitor networks, taking notes, and making suggestions as to how to sell television programs for ABC. He had office space available to him in the ABC building, but he used his study to view television for his job, even though his employer did not require that he do so as a condition of his employment. The Court allowed his claimed deduction because the study was used regularly and extensively for business purposes that were proximately related to his business. The Court also pointed out that the study was not used for personal entertaining or for personal television viewing. In the present case, petitioners used their den to correct papers, prepare lesson plans, and prepare visual aids for their classes. Respondent points out that other teachers 1078 at James' school are able to complete the required tasks on their free hour or during class *96 time while the students are busy working on assignments. However, we are not concerned with the manner in which James' colleagues accomplish their tasks. It may well be that the method of presentation, the material to be corrected, and the sincere desire to teach a subject well, distinguishes James from his fellow teachers. A similar argument can be made for Lou Anna. Also, Lou Anna's principal, in interests of safety, insists on her leaving by 4:30 every afternoon and does not provide her with the space or time to complete, in a professional manner, tasks such as preparing lessons, grading papers, preparing visual aids, and keeping attendance records, all vital and necessary requirements of her teaching job. Petitioners use their den exclusively in connection with their business as teachers. In the summer, when they are not teaching, petitioners use the room to collect, prepare, and catalogue materials to be presented the following school year. The room is not used for personal entertaining. As to the argument that petitioners' employers have not made the maintenance of an office a condition of their employment, such an argument has been foreclosed by Newi, supra.We *97 hold that petitioners' use of the room in this case is ordinary and necessary in relation to their duties as teachers, and the use is reasonable and directly related to the business of teaching. However, the amount claimed is excessive. The total floor area of the entire house is 1,500 square feet; the area used exclusively for business purposes is 168 square feet. We agree with respondent that the 20% claimed should be reduced to a more reasonable amount of 11%. In conclusion, the amounts deducted for travel, including gasoline, meals, lodging, tour admissions and auto expenses, are disallowed. The deduction for film and slides is allowed in the amount of $76.35. Finally, the deduction for utilities, upkeep, and depreciation for the use of their den is allowed, as modified, as ordinary and necessary business expenses because of the direct and reasonable relationship to their business as teachers. Reviewed and adopted as the report of the Small Tax Case Division. Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
*. Petitioners claimed gasoline cost in addition to 10 cents per mile rate. They have agreed that they are not entitled to a deduction of $252.41 for gasoline consumed on the trip.↩
2. One such case is David N. Weiman, T.C. Memo. 1971-92↩. In that case, the taxpayer deducted expenses for tuition and enrollment at a university in Japan. The taxpayer was a librarian at a high school with duties that included lectures on general information designed to complement certain courses. One such course dealt with Eastern civilizations and the Court found that her enrollment in "contemporary Japan" and "elementary Japanese" was directly related to her duties as a lecturer. However, she was not allowed to deduct expenses incurred while taking a 3-week, world tour. The Court stated that "We are unable * * * to differentiate petitioner's visits from the conventional visits of other tourists."
3. See Seymour Feinstein, T.C. Memo. 1970-288↩.